### A.S., by his parent and next friend P.B.S., Plaintiff–Appellant,

v.

### BOARD OF EDUCATION FOR THE TOWN OF WEST HARTFORD, Defendant–Appellee.

### Docket No. 01–9156.

United States Court of Appeals, Second Circuit.

Oct. 11, 2002.

Dwight Owen Schweitzer, Miami Beach, FL, for appellants.

Susan C. Freedman, Shipman & Goodwin LLP, Hartford, CT (Karen T. Staib, on the brief), for appellee.

Present OAKES and CABRANES, Circuit Judges, and PRESKA, District Judge.*

## SUMMARY ORDER

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of said District Court be and hereby is **AFFIRMED.**

Plaintiff-appellant A.S., by his parent and next friend P.B.S., timely appeals from the Ruling entered August 20, 2001,[1] that granted the motion of defendant-appellee Board of Education for the Town of West Hartford ("the Board") for summary judgment under Federal Rule of Civil Procedure 56 because the Board provided A.S. with a "free and appropriate public education" as required under 20 U.S.C. § 1412(a)(1)(A) of the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. §§ 1400–1487, when the Board created a transition plan from a residential educational facility to A.S.'s local public high school, pursuant to an Individualized Education Plan, 20 U.S.C. § 1414(d)(4)(A)(i), for A.S.

---

1. A.S.'s educational program has been the subject of a prior due process hearing and two actions in the District Court. *See A.S., by his parent and next friend P.B.S. v. Board of Educ. of the Town of West Hartford*, No. 3:00CV1130, slip op. at 3 (D.Conn., August 20, 2001); *Mr. J. v. Board of Educ.*, 98 F.Supp.2d 226 (D.Conn.2000); Hearing Officer Final Decision and Order in Case No. 97–267 (hearing officer granted parents reimbursement for the residential costs associated with A.S.'s participation in the Devereux program, after the parents unilaterally placed A.S. there). Plaintiff's request to proceed under fictitious names was granted by the District Court. *See A.S., by his parent and next friend P.B.S.*, No. 3:00CV1130, slip op. at 1 n. 1.

An "individualized education plan" ("IEP") is prepared at least annually, in writing, to address the particular educational needs of a disabled child and the services required to satisfy those needs. 20 U.S.C. § 1414(d)(4)(A)(i). The Planning and Placement Team ("PPT") is the Connecticut team that prepares the IEP and is comprised of the child's parent(s), a school official qualified in special education, the child's teacher, and, when appropriate, the child. *See id.* at § 1414(d)(1)(B). An IEP is meant to ensure that all children with disabilities as defined under the Individuals with Disabilities Education ACT ("IDEA"), 20 U.S.C. § 1401(3)(A), receive a "free and appropriate public education." 20 U.S.C. § 1412(a)(1)(A). Parents who disagree with the proposed IEP, or the Board of Education itself, if an impasse is reached, may file a complaint with the state or local educational agency, *see id.* at § 1415(b)(6); and any such complaint is resolved through an "impartial due process hearing" during which the child is to remain at the then-current educational placement ("stay-put"). *See id.* at § 1415(f). The school authorities bear the burden of proof at such a hearing to support the proposed IEP. *See Walczak v. Florida Union Free Sch. Dist.*, 142 F.3d 119, 122 (2d Cir.1998); and following the exhaustion of remedies available under state law, any party still aggrieved may sue in either state or federal court. 20 U.S.C. § 1415(i)(2)(A).

At a PPT meeting on February 5, 1999, the staff of Devereux Glenholme Treatment Center ("Devereux"), a residential, extended academic year program where A.S. was then enrolled, reported that A.S.

was ready for the transition to a less restrictive environment. A.S.'s father disagreed with the plan to move A.S. to Hall High School ("Hall") in West Hartford, Connecticut, and instead, offered a transition plan proposing placement at Oxford, in Westbrook, Connecticut, a private, non-special-education, all-male, college preparatory boarding school. His father believed that the Hall plan did not adequately address A.S.'s emotional disturbances and his need for structure, individualization and support. The PPT was unable to reach the required consensus due to the competing proposed placements for A.S. and a "stay put" was instituted pending a due process hearing.[2]

On April 6, 1999, the PPT reconvened. The Devereux staff reported that A.S. continued to make good progress in maintaining appropriate behavior. A.S.'s father indicated that weekend visits had been going well. But once again, the PPT was unable to reach a consensus for planning A.S.'s transition from Devereux. The Board formally requested a "due process hearing" on April 7, 1999.

The PPT convened on May 21, 1999, to review A.S.'s academic and social performance at Devereux and to develop summer school programming to facilitate A.S.'s transition to living at home and attending Hall. A.S.'s father rejected the Board's proposal and requested that the Board assume the expenses for A.S. to attend the summer program at Oxford. The Board declined to do so. A.S.'s father unilaterally transferred A.S. to Oxford, where A.S. remained through the 1999–2000 academic year. A.S.'s placement for

---

**2.** Under the IDEA, a "stay put" is a procedural right that is activated as soon as the PPT reaches an impasse and is issued pursuant to 20 U.S.C. § 1415(j), which states:

during the pendency of any proceedings conducted pursuant to this section, unless

the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of such child.

the 1999–2000 academic year is the subject of the instant appeal.

Hearing Officer Rosado, a practicing attorney, heard twelve days of testimony from eleven witnesses, and identified the two issues to be determined as: (1) whether the Hall transition plan would have provided A.S. with a free and appropriate public education; and (2) is the parent's unilateral placement of A.S. at Oxford an appropriate placement. Hearing Officer Rosado found that A.S. did not require a residential placement, or a therapeutic day program, in order to receive educational benefit. Final Decision and Order in Case No. 99–065. He also found that the Board complied with the procedural safeguards of the IDEA and that the Hall plan would have provided A.S. with a "free and appropriate public education." Having found the above, the Hearing Officer did not reach the question of whether Oxford was an appropriate placement.

The District Court granted defendant's summary judgment in an Order and Decision entered August 20, 2001, identifying the key issue as whether the "hearing officer improperly concluded that the Board's recommended placement was reasonably calculated to enable A.S. to receive educational benefits," *see A.S., by his parent and next friend P.B.S. v. Board of Educ. of the Town of West Hartford,* Case No. 3:00CV1130, 22, and "concluding that the Board's recommended placement of A.S. at Hall High would have provided him with meaningful educational benefit.... [T]he Hall placement[ ] ... was consistent with the IDEA requirement that children with disabilities be educated in the least restrictive environment [so-called "mainstreaming"]." *Id.* at 31–32. The District Court also concluded that "[b]ecause the challenged IEP was adequate and the Board offered A.S. a "free and appropriate public education" consistent with the IDEA, it is unnecessary to consider whether the private educational services obtained by the parents were appropriate to the child's needs." *Id.* (*citing M.C. ex rel. Mrs. C. v. Voluntown Bd. of Educ.,* 226 F.3d 60, 65 (2d Cir.2000)) ("Only if a court determines that a challenged IEP was inadequate should it proceed to the second question."). This timely appeal followed.

We AFFIRM the judgment of the District Court substantially for the reasons stated by the Court in its Ruling, *A.S., by his parent and next friend P.B.S. v. Board of Education of the Town of West Hartford,* Case No. 3:00CV1130 (D.Conn., August 20, 2001).