**19-354**
*Doe v. E. Lyme Bd. of Educ.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term 2018

(Argued: November 14, 2018 | Decided: June 18, 2020)

Docket No. 19-354

JANE DOE, JOHN DOE, BY AND THROUGH HIS PARENT JANE DOE,

*Plaintiffs-Appellants*,

v.

EAST LYME BOARD OF EDUCATION,

*Defendant-Appellee*,

CONNECTICUT STATE DEPARTMENT OF EDUCATION

*Defendant.*
_____

Before:

JACOBS, POOLER, and WESLEY, *Circuit Judges*.

Appellant Jane Doe ("Doe") sued the East Lyme Board of Education (the "Board") on behalf of herself and her son, John Doe, under the Individuals with Disabilities Education Act ("IDEA" or the "Act"), alleging that the Board denied John a free appropriate public education ("FAPE") and violated the "stay-put" provision of the Act by refusing to pay for services mandated by John's individualized education plan ("IEP"). We previously held that the Board had provided John with an adequate IEP and a FAPE, and that John's private school placement had been inappropriate. We agreed, however, that the Board had

violated the IDEA's "stay-put" provision. Thus, we vacated the reimbursement award and remanded for the purpose of calculating the total value of services specified in John's "stay-put" IEP and to structure a prospective, compensatory education award to remedy the Board's stay-put violation.

The United States District Court for the District of Connecticut (Arterton, *J.*) awarded Doe reimbursement for her out-of-pocket expenses relating to services covered by John's stay-put IEP, but denied reimbursement for tuition and services not mandated by the IEP. The district court also ordered that compensatory funds be placed in an escrow account with certain restrictions. Doe appeals, and now argues, that she should be reimbursed for tuition payments and other expenses, and that the award structure is inequitable.

We agree in part. The district court did not abuse its discretion in denying reimbursement for several of the expenses Doe requested. The district court did, however, err in determining that the fund's administrator could unilaterally reduce the services covered by the fund and that Doe must pay for half the compensatory fund's fees.

We therefore **AFFIRM IN PART**, **VACATE IN PART**, and **REMAND** for further proceedings consistent with this opinion.

————————————

JANE DOE, *pro se*, Old Lyme, CT, *for Plaintiffs-Appellants*.

SHELDON D. MYERS, Kainen, Escalera & McHale, P.C., Hartford, CT, *for Defendant-Appellee*.

————————————

WESLEY, *Circuit Judge*:

Appellant Jane Doe ("Doe"), through counsel, sued the East Lyme Board of Education (the "Board") on behalf of herself and her son, John Doe ("John"), under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*, alleging that the Board denied John a free appropriate public education ("FAPE")

2

and violated the "stay-put" provisions of the IDEA by refusing to pay for services mandated by John's individualized education plan ("IEP").[1] The district court granted summary judgment (in part) to Doe on the stay-put claim and ordered reimbursement of certain mandated services for which Doe had paid out-of-pocket. It granted summary judgment to the Board on the other claims, reasoning that the Board had provided a FAPE during the 2009–2010 school year and Doe's placement of her son in a private school had been inappropriate. Both parties appealed. We affirmed the district court's substantive rulings but vacated the reimbursement award and remanded for the limited purpose of calculating and

---

[1] A FAPE "includes both 'special education' and 'related services.'" *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988, 994 (2017) (quoting 20 U.S.C. § 1401(9)). "Special education" is "specially designed instruction . . . to meet the unique needs of a child with a disability," 20 U.S.C. § 1401(29), and "related services" are the services "required to assist a child . . . to benefit from" that specially designed instruction, 20 U.S.C. § 1401(26). As discussed in detail below, if a parent believes her child has not received a FAPE, she may file an administrative due process complaint, and the IDEA's "stay put" provision requires that "during the pendency of any [such] proceedings . . . the child shall remain in the then-current educational placement of the child." 20 U.S.C. § 1415(j). "It therefore requires a school district to continue funding whatever educational placement was last agreed upon for the child until the relevant administrative and judicial proceedings are complete." *T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 171 (2d Cir. 2014).

structuring a prospective, compensatory education award. *See Doe v. E. Lyme Bd. of Educ.*, 790 F.3d 440 (2d Cir. 2015) ("*Doe I*").

On remand, after a three-day bench trial, the district court awarded Doe reimbursement for past expenses relating to services covered by John's IEP. It denied any reimbursement for tuition or for services Doe provided that were not mandated by the IEP. It ordered that the compensatory funds be placed in an escrow account with certain restrictions. Doe appealed *pro se*.[2] We dismissed that appeal for lack of appellate jurisdiction, but allowed Doe to appeal again once the district court entered a new judgment that included a prejudgment interest calculation. *Doe v. E. Lyme Bd. of Educ.*, 747 F. App'x 30, 30–31 (2d Cir. 2019) (summary order) ("*Doe II*").

Following our dismissal, the district court approved a formula for calculating interest and entered a new judgment. Doe now appeals for a third

---

[2] Generally, a non-lawyer parent may not represent her child *pro se*. *Tindall v. Poultney High Sch. Dist.*, 414 F.3d 281, 284 (2d Cir. 2005). However, a parent has an independent enforceable right under the IDEA and may pursue a claim on her own behalf. *Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 535 (2007). Therefore, Doe may appear *pro se* in this appeal because she brought claims on her own behalf as well as her son's.

time, *pro se*, resulting in a new appeal in the above-captioned case. We permitted the parties to file supplemental briefs.[3]

For the reasons stated below, we vacate and remand the judgment of the district court as to: (1) the power of the escrow agent to unilaterally decide whether John still requires certain educational services, and (2) the requirement that Doe pay for half the maintenance fee on the escrow account. We affirm the district court's order in all other aspects.

## BACKGROUND

### A. Facts

Doe and her son, John, resided within the District of East Lyme, Connecticut (the "District") at all relevant times. Shortly before turning three years old, John was diagnosed with autism and he requires special education services.[4] John attended East Lyme public schools from preschool through the middle of first grade. He was then placed in Hope Academy ("Hope"), a private special

---

[3] We consider Doe's arguments from her brief in *Doe II* and her supplemental brief in this appeal.

[4] Although John was diagnosed with autism, Doe has offered evidence that John is more appropriately diagnosed as having "dyslexia, and a specific language impairment, including an expressive language disorder and underlying syntactic deficits." *Doe ex rel. v. E. Lyme Bd. of Educ.*, No. 3:11-CV-291 (JBA), 2012 WL 4344304, *2 n.7 (D. Conn. Aug. 14, 2012).

education facility in Orange, Connecticut. He attended Hope Academy at the Board's expense for the rest of the 2006–2007 school year and remained there for the 2007–2008 school year.

During a June 2008 Planning and Placement Team meeting, the Board proposed an IEP where John would continue at Hope for third grade during the 2008–2009 school year. In August 2008, Doe expressed concerns about John's social development at Hope to Stephen Buck, the Board's then-Director of Special Education. Doe's concerns included John's lack of interaction with typical peers, and a report that another Hope student had harassed and hit John at school. Buck agreed to place John on a leave of absence from Hope. In September 2008, Doe enrolled John at Solomon Schechter Academy ("Solomon Schechter"), a private religious school in New London, Connecticut, at her own expense. Solomon Schechter did not provide specialized instruction to students with disabilities, nor did it employ staff certified to provide such instruction.

In December 2008, Doe and the Board agreed to an IEP placing John at Solomon Schechter (the "2008–2009" or "stay-put" IEP). Under the 2008–2009 IEP, Doe would pay Solomon Schechter's tuition costs, but the Board would provide

6

funding for related services.[5]  These services included Orton–Gillingham reading instruction (5 hours/week), speech therapy (2.5 hours/week), and occupational/physical therapy (1.5 hours/week).  In February 2009, the parties amended the 2008–2009 IEP to increase speech therapy to three hours per week.

In June 2009, the Board informed Doe that it would not pay for tuition at Solomon Schechter should she continue John's placement there.  The Board proposed instead that John enroll at Niantic Center School ("Niantic"), a public school in the District with a qualified special education teacher.  Doe disagreed with this placement.  Nevertheless, the Board issued an IEP placing John at either Niantic or Flanders Elementary (John's home elementary school), with specified related services (the "2009–2010 IEP").

Doe faxed a letter to the Board rejecting the 2009–2010 IEP, explaining her intention to keep John at Solomon Schechter, and outlining additional services she planned to secure for John.  She also communicated her expectation that such services would be provided at public expense, including, for the first time, "the

---

[5] Doe did not request that the Board pay for Solomon Schechter tuition at that time. Indeed, in a December 21, 2008 letter, she confirmed that she agreed to be responsible for Solomon Schechter tuition.

cost of the placement at [Solomon Schechter.]" Doe App. 103. John continued to attend Solomon Schechter for the 2009–2010 school year.

In August 2010, Doe again provided written notice of her intention to continue John's enrollment at Solomon Schechter for the 2010–2011 school year, with specified related services, and her expectation that she would be reimbursed for her expenses, including the cost of the placement at Solomon Schechter. The Board did not provide John with an IEP for the 2010–2011 school year.[6]

### B. Procedural History

On April 27, 2010,[7] Doe filed an administrative due process complaint with the State of Connecticut under the IDEA. *See* 20 U.S.C. § 1415(b)(6), (f); Conn. Gen. Stat. § 10–76h. Doe alleged that the Board failed to provide John a FAPE and violated various requirements under both the IDEA and Connecticut law. She sought reimbursement of Solomon Schechter tuition for the 2009–2010 and 2010–

---

[6] The Board erroneously believed that by unilaterally placing John at Solomon Schechter for the 2010–2011 school year, Doe terminated the Board's responsibility to provide an IEP for John because the school was outside of the District's borders.

[7] Doe initially filed a due process complaint on April 27, 2010, but because her lawyer withdrew from the case, she requested that the matter be dismissed without prejudice. The Hearing Officer granted that request on September 23, 2010 and she refiled on September 30, 2010.

2011 school years, and the costs of additional services she secured as a result of the Board's alleged violations.[8]

After an administrative hearing, the hearing officer found that (1) the Board offered John a FAPE for school years 2008–2010, (2) the Board failed to provide a FAPE during the 2010–2011 school year, (3) Solomon Schechter was an inappropriate placement due to its lack of special education services, and therefore (4) Doe was not entitled to reimbursement for Solomon Schechter tuition.[9]

### 1. Doe's First Appeal

Following the hearing officer's decision, Doe, through counsel, filed a complaint in the United States District Court for the District of Connecticut, alleging that the Board denied John a FAPE, that Solomon Schechter was an appropriate placement, and that the Board had violated the "stay-put" provision of the IDEA. The parties cross-moved for summary judgment. The district court

---

[8] As we noted in *Doe I*, because the parties agreed that Doe would pay tuition at Solomon Schechter for the 2008–2009 school year, Doe did not seek reimbursement of tuition for that year. *See Doe I*, 790 F.3d at 447 n.1.

[9] If a parent believes a state has not provided a FAPE to her eligible child, "the parent[] may enroll the child in a private school and seek retroactive reimbursement for the cost of the private school from the state. Private placement is reimbursable only if such placement, rather than a proposed IEP, is proper under the Act." *Doe I*, 790 F.3d at 448 (internal quotation marks and citations omitted).

9

(Arterton, *J.*) adopted the magistrate judge's recommendations and granted the Board's motion in part. It agreed that the Board provided John a FAPE in the 2009–2010 school year and that Solomon Schechter was an inappropriate placement, but held that the Board violated the IDEA's stay-put provision by failing to provide the related services in place under the 2008–2009 IEP once Doe and the Board reached an impasse concerning John's IEP. *See Doe v. E. Lyme Bd. of Educ.*, Civ. No. 3:11-CV-291 (JBA), 2012 WL 4344301, at *2–8 (D. Conn. Sept. 21, 2012). Thus, the district court ordered the Board to reimburse Doe for the out-of-pocket expenses she paid for such services during litigation. Both parties appealed.

On appeal, Doe argued that the Board's stay-put violation entitled her to the full value of the related services provided for in the 2008–2009 IEP, and not just the amounts she paid out-of-pocket. She also challenged the district court's decisions that John received a FAPE and that Solomon Schechter was an inappropriate placement. As relevant here, while Doe claimed that she should be reimbursed for Solomon Schechter tuition because it was an appropriate placement, she explicitly stated that she did "not assert any stay-put right to [Solomon Schechter] tuition." *Doe I*, 2d Cir. 14-1261, doc. 81, (Appellant Br.) at 25.

10

We affirmed in part, holding that the 2009–2010 IEP was procedurally and substantively adequate, and that John received a FAPE during the 2009–2010 school year. *Doe I*, 790 F.3d at 449–50. We also affirmed the district court's conclusion that, notwithstanding the Board's failure to provide a FAPE in the 2010–2011 school year, Doe was not entitled to reimbursement for Solomon Schechter tuition. *Id.* at 450–52.[10]

As to the stay-put claim, we affirmed the district court's conclusion that the Board violated the IDEA's stay-put provision on an ongoing basis by failing to provide John with the "related services" specified in the 2008–2009 IEP. *Id.* at 452–54. We explained that the relevant educational placement for purposes of the stay-put analysis was the 2008–2009 IEP (as amended in February 2009), which required that (1) Doe pay for Solomon Schechter tuition at her own expense, and (2) the Board pay for the "related services," *i.e.*, the Orton–Gillingham reading instruction (5 hours/week), speech therapy (3 hours/week), and occupational/physical therapy (1.5 hours/week). *Id.* at 446, 454.

---

[10] Specifically, we found that because the school was not tailored to meet John's special needs, which had to be addressed by outside providers, it was an "inappropriate placement." *Doe I*, 790 F.3d at 450–52.

11

We also held that the district court erred by ordering the Board to reimburse Doe only for her out-of-pocket expenses because John was entitled to the full value of all services covered by the 2008–2009 IEP. This included covered services Doe did not (or could not) provide for John. *Id.* at 456. Thus, we determined that "the Board owes reimbursement in the amount [Doe] expended for services the Board was required to provide, [*i.e.*, those described in the stay-put IEP,] plus compensatory education to fill the gap of required services that [Doe] did not fund." *Id.* at 457. We held, however, that the Board's obligation to provide stay-put services was triggered upon Doe's filing of the administrative complaint, and not when the parties reached an impasse. *Id.* at 455–56. We thus required the district court to recalculate the value of the services owed to Doe because we determined the Board's obligations began in April 2010, rather than June 2009.

Because Doe did not seek Solomon Schechter tuition as a part of the stay-put claim, and because we determined that the stay-put IEP services did not include "extended school year" services, we held that Doe was not entitled to reimbursement for those services. *Id.* at 453, 455.

We vacated the district court's award and instructed that, on remand, the district court should (1) calculate "the total value" of the services required under

12

the stay-put IEP, (2) order the Board to reimburse Doe for her out-of-pocket expenses for such services, and (3) direct the Board to make available to Doe the remainder of the total value in the form of compensatory education. *Id.* at 456–57. We left the mechanics of structuring the compensatory education award to the district court's discretion. *Id.* at 457.

## 2. Doe's Second Appeal

On remand, the district court held a three-day bench trial to determine the value of Doe's reimbursement and the compensatory education award (the "2017 Bench Trial"). Doe asked the district court to reimburse her not only for the "covered" services she paid for (*i.e.*, services described in the 2008–2009 IEP), but also for "uncovered" services (*i.e.*, services either not described in the 2008–2009 IEP or "over and above" the hours prescribed in the 2008–2009 IEP).[11] ROA doc.

---

[11] Specifically, Doe asked the court to "provide a portion of the compensatory education remedy by reimbursing [her] for Uncovered Services, in the amount of $129,405.34, with interest calculated from the date of each expenditure." ROA doc. 179 (Pre-Trial Mem.) at 5. The "Uncovered Services" for which Doe requested reimbursement and compensatory education included items such as "speech-language therapy services [Doe provided] over and above the number of hours specified in the stay-put IEP, as well as on other services and items not specified in the stay-put IEP that she provided to John," *id.* at 4, including assistive technology; computer services; language hardware and software; tuition and transportation for the schools John attended; and transportation expenses incurred in taking John to and from appointments with his providers, *see* ROA doc. 179-4 at 3.

13

179 (Pre-Trial Mem.) at 4–5. She submitted lists of her requested expenses, which included items such as evaluations and assistive technology. Doe offered testimony from Dr. Robert Kemper, a psycholinguistic specialist who had evaluated John on numerous occasions and who had provided writing instruction to John, regarding John's current educational needs. She did not, however, include the cost of Dr. Kemper's 2016 evaluation in her list of expenses. Nor did she request that Dr. Kemper's fees for his appearance and testimony be paid.

Doe also asked that compensatory education funds be placed in an escrow account because of John's age and his plans to attend college. She argued that the account be made available for at least six years, representing the duration of the Board's stay-put violation, and that the Board pay all expenses associated with the account. Additionally, Doe claimed that the compensatory award should include tuition for John's high school, Lyme-Old Lyme High School.

In a pre-trial conference held on March 17, 2017, the district court ruled that Doe could seek relief only for covered expenses specified in the stay-put IEP, and not for any additional expenses Doe may have incurred. *See Doe ex rel. Doe v. E. Lyme Bd. of Educ.*, 262 F. Supp. 3d 11, 18 & n.6 (D. Conn. 2017). On June 29, 2017, the district court ordered the Board to reimburse Doe for her out-of-pocket

14

expenses on covered services and to fund an escrow account for compensatory educational services, which included speech-language therapy, reading instructors, writing instructors, occupational and physical therapy, as well as analogous services such as assistive technology and other transition-related needs.[12]  *Id.* at 36–37.  Because the 2008–2009 IEP did not require the Board to pay tuition, however, the district court held that Doe could not use payments from the escrow account for John's high school tuition.  *Id.* at 37 n.49.

As to the structure of the escrow account, the district court ordered that the account remain open until John completed college or until six years passed, "whichever comes first."  *Id.* at 35.  Any remaining funds would be refunded to the Board.  *Id.*  The district court appointed Doe's recommended attorney as the account's escrow agent and empowered her to not only review reimbursement

---

[12] Specifically, the district court ordered the Board to (1) reimburse "in the [additional] amount of $36,555.94 plus interest (the amount of which remains to be calculated)," *Doe ex rel. Doe*, 262 F. Supp. 3d at 37, for the expenses Doe had incurred on covered services in the stay-put IEP since the date of the March 17, 2014 judgment; and (2) "place $203,478.10 for compensatory education into an escrow account for [John], to remain open for six years or until [he] graduates college, whichever occurs first," *id.* at 15.  In addition, the district court directed Doe to submit documentation of "supplemental reimbursement and transportation expenses incurred between January 12, 2017 and the date of [the judgment]," and further directed both parties to "submit their proposed interest calculations and methodology."  *Id.* at 37 n.51.

claims, but also reduce the services eligible for reimbursement if she concluded that John no longer needed the services. *Id.* at 37 & n.50. In addition, the district court ordered the parties to split the costs of the agent and administration of the account. *Id.* at 37 n.50.

On July 19, 2017, the district court entered its judgment. Doe timely appealed. On January 9, 2019, we dismissed Doe's second appeal for lack of jurisdiction and remanded to the district court to "complete calculations as to prejudgment interest, supplemental reimbursement, and transportation expenses." *Doe II*, 747 F. App'x at 31.

### 3. Doe's Third Appeal

Following our dismissal, the district court "updated" the awards from its July 19, 2017 judgment and ordered the Board to "reimburse [Doe] in the amount of $47,968.02, plus interest, and to place $192,066.02 for compensatory education into an escrow account within thirty (30) days of the date of [the Order on Remedies]." ROA doc. 282 at 4, 7. The Board was ordered to "pay interest to [Doe] on the reimbursement awards calculated using [the Board's] proposed methodology and reduced slightly to reflect the final value of the reimbursement

award owed to [the Does] set forth [in the Order on Remedies]." *Id.* at 7. On January 18, 2019, the district court entered an amended final judgment.

Doe then filed this appeal. She subsequently moved for a stay of the prospective compensatory award pending our determination here.

## DISCUSSION

During the course of this long litigation, we have already resolved several questions surrounding the conduct at issue here, including whether Doe was deprived of the right to participate in the development of John's IEP; whether John's IEP for the 2009–2010 school year was reasonably calculated to enable him to receive educational benefits; whether the Board's failure to provide an IEP during the 2010–2011 school year denied John a FAPE; and whether John's enrollment in Solomon Schechter was an appropriate placement. *See Doe I*, 790 F.3d at 440–57. Therefore, the only remaining issues involve the compensatory award owed to Doe for the Board's stay-put violation.

To that end, we again emphasize that once a party has filed an administrative due process complaint, the IDEA's stay-put provision provides that "during the pendency of any proceedings conducted pursuant to [20 U.S.C.

17

§ 1415] . . . the child shall remain in the then-current educational placement of the child." 20 U.S.C. § 1415(j). In other words, the provision "seeks to maintain the educational status quo while the parties' dispute is being resolved." *T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 152 (2d Cir. 2014). Thus, a school district is required "to continue funding whatever educational placement was last agreed upon for the child until the relevant administrative and judicial proceedings are complete." *Id.* at 171.

Although courts may not award damages for violations of the IDEA, *Polera v. Bd. Of Educ.*, 288 F.3d 478, 486 (2d Cir. 2002), they may award retrospective and/or prospective equitable relief, including reimbursement of paid expenses or compensatory education. *See Doe I*, 790 F.3d at 454. Compensatory education is "prospective equitable relief, requiring a school district to fund education beyond the expiration of a child's eligibility as a remedy for any earlier deprivations in the child's education." *Somoza v. N.Y.C. Dep't of Educ.*, 538 F.3d 106, 109 n.2 (2d Cir. 2008). In other words, compensatory education aims to make up for educational services the child should have received in the first place. Where, as here, an educational agency has violated the stay-put provision, "compensatory education may—and generally should—be awarded to make up for any appreciable

18

difference between the full value of stay-put services owed and the (reimbursable) services the parent actually obtained." *Doe I*, 790 F.3d at 456–57; *see also id.* at 445 ("[T]he appropriate equitable relief for a stay-put violation is reimbursement or compensatory education (or both) for the full value of services that the educational agency was required to fund, not the (lesser) value of services the Parent was able to afford.").

We review awards of equitable relief for abuse of discretion. *Abrahamson v. Bd. of Educ. of Wappingers Falls Cent. Sch. Dist.*, 374 F.3d 66, 76 (2d Cir. 2004); *T.M.*, 752 F.3d at 170; *Doe I*, 790 F.3d at 457 ("We leave the mechanics of structuring the compensatory education award to the district court's sound equitable discretion . . . ."); *see also Florence Cty. Sch. Dist. Four v. Carter ex rel. Carter*, 510 U.S. 7, 16 (1993) (explaining that the court enjoys "broad discretion" in crafting IDEA relief, which depends upon "equitable considerations" (internal quotation marks omitted)). "A district court abuses its discretion when its decision (1) rests on an error of law or a clearly erroneous factual finding, or (2) cannot be found within the range of permissible decisions." *T.M.*, 752 F.3d at 170.

### I. The Compensatory Award

Doe argues that various aspects of the structure of the prospective compensatory award are inequitable. Doe first challenges the district court's use of an escrow account with certain limitations—a time limit, use of an escrow agent for determining payouts, and a refund of unused funds to the school district. However, Doe asked for this structure and the district court granted her proposal and selected her proposed escrow agent, all over the Board's objection. Moreover, in *Doe I*, we referenced *Streck v. Bd. of Educ. of E. Greenbush Cent. Sch. Dist.*, 408 F. App'x 411, 415 (2d Cir. 2010) (summary order), which involved a similar escrow arrangement, as an example for how the district court could structure the award. *See Doe I*, 790 F.3d at 457.

Doe further argues that her award's time limit is unduly short relative to the one in *Streck*, and she objects to the requirement (not in *Streck*) that she coordinate John's service providers. But Doe specifically requested the six-year limit and the autonomy to select John's service providers. Furthermore, *Streck*, a summary order, was not a tight constraint on the district court's discretion. Finally, we reject Doe's argument that the award should not overlap with her son's final year of

IDEA eligibility.[13] The district court stated that the compensatory education award would be used in addition to John's IEP services and Doe points to no evidence showing duplication of benefits.

In addition, Doe now argues for the first time that the compensatory award should be lengthened to 11 years from the date of the judgment because John, who is now in college, may go to graduate school. Because Doe did not make any argument in the district court to extend the award, this argument is waived. *See Virgilio v. City of New York*, 407 F.3d 105, 116 (2d Cir. 2005) ("In general we refrain from passing on issues not raised below." (internal quotation marks omitted)).

Two of Doe's arguments regarding the compensatory award have merit. First, Doe argues that giving final decision-making authority to the escrow agent violates the IDEA. Doe directs our attention to *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 526 (D.C. Cir. 2005) for the proposition that decision making (or modifying) authority in IDEA cases cannot be delegated beyond a hearing officer or the court that reviews the officer's award. *See* 401 F.3d at 527

---

[13] The obligations imposed by the IDEA generally terminate when a child reaches the age of 21. *See* 20 U.S.C. § 1412(a)(1)(A). In Connecticut, however, a child remains eligible under the IDEA until he or she reaches the age of 21 or graduates from high school, whichever comes first. *See* Conn. Gen. Stat. Ann. § 10–76d(b).

("[A]s IDEA makes plain, hearing awards 'shall be final' unless modified through administrative appeal or judicial action. . . . The point is that absent a new hearing, the existing award is binding on both parties." (internal citations omitted)).

Although *Reid* arose in the context of the denial of a FAPE, we find that the logic of *Reid* applies here. *Cf. Doe I*, 790 F.3d at 456 ("Although we have typically endorsed compensatory education as a remedy for substantive FAPE claims, there is no reason why the remedy should not be equally available for stay-put violations." (internal citation omitted)). The escrow agent's power to unilaterally reduce Doe's access to the award amounts violates the IDEA's requirement that adjustments to an award "must be justified to a hearing officer." *Reid ex rel. Reid*, 401 F.3d at 527; *see also* 20 U.S.C. § 1415(i)(1)(A), (B). The IDEA requires that upon obtaining final relief, Doe's award may not be modified by either party absent a new hearing. *See* 20 U.S.C. § 1415(i)(1)(A), (B).

Doe also challenges the requirement that she pay for half the administrative fee on the escrow account. The IDEA seeks to ensure a "free" education; Doe should not be required to pay for a portion of the cost of managing a fund for educational services the Board should have provided. *See Doe I*, 790 F.3d at 456 ("Congress did not intend the child's entitlement to a *free* education to turn upon

22

her parent's ability to 'front' its costs." (quoting *Miener ex rel. Miener v. State of Mo.*, 800 F.2d 749, 753 (8th Cir. 1986)); *E.M. v. N.Y.C. Dept. of Educ.*, 758 F.3d 442, 452 (2d Cir. 2014) ("The IDEA promises a free appropriate education to disabled children without regard to their families' financial status."). This is particularly true where prospective instruction is meant to remedy an "educational deficit" created by the Board. *See G. ex rel. RG v. Fort Bragg Dependent Schs.*, 343 F.3d 295, 309 (4th Cir. 2003). To make Doe pay for the maintenance of a compensatory education account would make John's access to appropriate education dependent upon Doe's ability to front its costs.

Therefore, we vacate the compensatory education award to the extent that it permits the escrow agent to unilaterally decrease Doe and John's reimbursable services and requires Doe to pay for half the maintenance costs. We remand for the district court to enter an amended order removing these conditions.

## II. The District Court's Interest Calculations

In June 2015, the Board paid Doe $97,455 to reimburse her for expenses covered by the stay-put IEP. After the 2017 Bench Trial (following the remand in *Doe I*), the district court asked the parties to submit proposed methods for calculating prejudgment interest. Doe proposed the following formula for interest

23

calculations: (1) calculating the interest for "covered service" expenses based on the average interest rate during the school year the expense was incurred; and (2) calculating the interest for transportation expenses based on the average interest rate during the calendar year the expense was incurred. Her interest calculations yielded a total interest payment of $1,125.25 based on the updated reimbursement award of $47,968.02. She did not argue that the original $97,445 payment made in 2015 was without interest and did not calculate the interest due on that interest.

The Board proposed a flat interest rate of 1.22 percent ("[T]he weekly 1-year constant maturity Treasury yield as published by the Board of Governors of the Federal Reserve System for the week of 06/23/2017, the calendar week preceding the date of the [first] judgment"). ROA doc. 255-1 at 2; ROA doc. 282 at 6. Further, the calculation included compounded interest. The Board's proposed calculations resulted in a total of $4,099.06, with $3,089.62 to be paid on the $97,445 the Board paid Doe in 2015. The district court adopted the Board's proposed interest method because it was comparatively straightforward and efficient compared to Doe's proposed method, and ordered that the Board additionally reimburse Doe for $47,968.02 "plus interest." ROA doc. 282 at 6–7.

24

Doe argues that the district court incorrectly calculated the interest owed to her by (1) using an interest percentage that was too low, (2) failing to compound the interest, and (3) failing to include interest on interest owed on the Board's June 2015 payment. We review the decision to grant prejudgment interest and the rate at which such interest is calculated for abuse of discretion. *Endico Potatoes, Inc. v. CIT Group/Factoring, Inc.*, 67 F.3d 1063, 1071–72 (2d Cir. 1995). We conclude that the district court did not abuse its discretion.

Generally, interest for money judgments in civil cases is calculated from the date of the judgment and uses the "weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System" for the calendar week preceding the entry of judgment. 28 U.S.C. § 1961(a). The interest is calculated daily and compounded annually. *Id.* § 1961(b). Prejudgment interest is generally not awarded, but it may be ordered in the district court's discretion to ensure that a plaintiff is fully compensated or to meet the "remedial purpose of the statute involved." *See Wickham Contracting Co., Inc. v. Local Union No. 3, Int'l Bhd. of Elec. Workers, AFL-CIO*, 955 F.2d 831, 833–34 (2d Cir. 1992). In the IDEA context, we have awarded prejudgment interest that departed from the interest rates set in Section 1961 "because the [plaintiffs] incurred the[]

25

costs years before the first district court decision in th[e] case[.]" *Streck*, 408 F.

App'x at 415. There, we instructed the district court to calculate the interest from

the date the plaintiffs paid each expense. *Id.*

The district court elected not to calculate interest from the various years Doe

incurred expenses (Doe's proposed method) and instead adopted the Board's

method (use of a single, higher interest rate based on the date of the 2017

judgment) because it was more straightforward. Doe does not argue explicitly that

the method adopted by the district court is erroneous. *See* Appellant Suppl. Br. at

34 (explaining that Doe is not "appealing the fact that the district court chose the

Board's method of calculating interest"). Indeed, as Doe apparently recognizes,

the Board's method results in a higher interest payment for her.[14]

Finally, Doe's contention that the Board's calculations did not include

compounded interest is simply incorrect.

### III. The Law of the Case Doctrine Bars Several of Doe's Arguments

Doe also raises several arguments that we already addressed in *Doe I*. These

include her challenges to (1) the denial of reimbursement for school tuition; (2) the

---

[14] Doe's remaining challenges either misread *Streck*, propose a *lower* rate of interest, or are waived by her failure to raise them in the district court. *See, e.g.*, Appellant Suppl. Br. at 34–36, 44–45.

denial of reimbursement for assistive technology, extended school year services, and other services not covered by the stay-put IEP; (3) the determination that the filing of Doe's due process complaint triggered the Board's stay-put obligation; (4) the determination that Solomon Schechter was an inappropriate placement; and (5) the determination that the Board offered John a FAPE for the 2009–2010 school year. These arguments are barred by the law of the case doctrine.

The law of the case doctrine "forecloses reconsideration of issues that were decided—or that could have been decided—during prior proceedings." *United States v. Williams*, 475 F.3d 468, 471 (2d Cir. 2007). Thus, a failure to raise an issue that could have been raised in an earlier appeal bars a litigant from raising it in a second appeal. *See id.* at 475–76. Further, "when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case unless cogent and compelling reasons militate otherwise." *Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009) (internal quotation marks omitted). Compelling reasons to revisit a decision include "an intervening change in law, availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Id.* at 99–100 (internal quotation marks omitted).

## A. *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*

Doe contends that *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE–1*, 137 S. Ct. 988 (2017) "change[d] controlling law" in this Circuit allowing us to revisit the denial of her FAPE claim, Appellant Suppl. Br. at 16; we disagree. In *Endrew F.*, the Supreme Court determined that the IDEA's substantive requirements were not met where the student had received an "educational benefit that is merely . . . more than *de minimis*." 137 S. Ct. at 997 (quoting *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE–1*, 798 F.3d 1329, 1338 (10th Cir. 2015) (brackets omitted)); *see also id.* at 1000–01 ("It cannot be the case that the [IDEA] typically aims for grade-level advancement for children with disabilities who can be educated in the regular classroom, but is satisfied with barely more than *de minimis* progress for those who cannot."). The Court held that "[t]he IDEA demands more. It requires an educational program reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Id.* at 1001.

In *Doe I*, we explained that "while an IEP need not 'furnish every special service necessary to maximize each handicapped child's potential,' it must be 'likely to produce progress' that is more than 'trivial advancement.'" *Doe I*, 790

F.3d at 450 (quoting *Cerra v. Pawling Cent. Sch. Dist.*, 427 F.3d 186, 194–95 (2d Cir. 2005)). Equating "trivial advancement" with a "*de minimis*" educational benefit, Doe now claims that the 2009–2010 IEP was "evaluated under too low of a standard" because "[p]roviding 'more than trivial advancement' is hardly offering an education at all." Appellant Suppl. Br. at 16 (quoting *Doe I*, 790 F.3d at 450).

Had the school district successfully defended John's IEP as adequate because it provided only a "trivial advancement" there would be a good deal of traction to Doe's argument. But that was not how we measured the adequacy of John's IEP. In *Cerra*, we explained that "a school district fulfills its substantive obligations under the IDEA if it provides an IEP that is 'likely to produce progress, not regression,' and if the IEP affords the student with an opportunity greater than mere 'trivial advancement.'" *Cerra*, 427 F.3d at 195 (quoting *Walczak v. Florida Union Free Sch. Dist.*, 142 F.3d 119, 130 (2d Cir. 1998)). However, we have been clear that "[t]his Court's decision in *Cerra* does not stand for the proposition that the IDEA is satisfied with *any* progress above the floor of 'trivial advancement,' and it should not be cited for that proposition." *Mr. P. v. W. Hartford Bd. of Educ.*, 885 F.3d 735, 757 n.12 (2d Cir. 2018). This is because "in *Cerra* the State Review Officer found that the student had made meaningful—not simply more than trivial

29

or *de minimis*—progress when she took advantage of the services offered to her, based on her passing grades, progress reports, teacher testimony, and formal evaluations." *Id.*[15] Indeed, we specifically observed that "[p]rior decisions of this Court are consistent with the Supreme Court's decision in *Endrew F.*" *Id.* at 757. *Endrew* does not signal a change in the law of this Circuit.

**B.** **The Law of the Case Doctrine Bars Doe's Arguments for Reimbursement of Several Expenses**

Notwithstanding *Doe I*, Doe continues to argue that she should have been reimbursed for school tuition, extended school year services, assistive technology, and other uncovered services that she paid for during this litigation. As for tuition, Doe expressly disclaimed "any stay-put right to [school] tuition" in her prior appeal (2d Cir. 14-1261, doc. 81 at 25), thereby waiving any reimbursement claim, *see Williams*, 475 F.3d at 475–76.

---

[15] The "trivial advancement" language originates from *Walczak*, 142 F.3d at 130, where we explained that although "IDEA does not itself articulate any specific level of educational benefits that must be provided through an IEP," "the door of public education must be opened for a disabled child in a meaningful way. This is not done if an IEP affords the opportunity for only trivial advancement." *Id.* at 130 (internal citations and quotation marks omitted). Importantly, in *Walczak*, we found the student's "objective academic achievements [were] uncontradicted and certainly not 'trivial'" and "impressive when considered in light of the significant social problems that impeded [the student's] academic progress . . . ." *Id.* at 131. Thus, *Walczak* also did not stand for the proposition that anything above "mere trivial advancement" satisfies the IDEA's requirements.

Moreover, we determined in *Doe I* that the stay-put IEP for the 2008–2009 school year required that (1) Doe pay for school tuition at her own expense, and (2) the Board pay for the "related services," which consisted of a certain amount of speech and language therapy, reading instruction, and physical and occupational therapy. *See Doe I*, 790 F.3d at 446 (specifying what the stay-put IEP required of both parties). In awarding compensatory education, we recognized that the Board fell short of its requirements under the IDEA and determined that, although Doe could not be reimbursed for tuition, the award would "make up for any appreciable difference between the full value *of stay-put services owed* and *the (reimbursable) services*" Doe provided. *Id.* at 456–57 (emphasis added). *Doe I* required the district court to determine the total value of stay-put services the Board had failed to provide and to craft a *prospective* award in that amount. *See id.* Uncovered expenses, *i.e.*, any services not included in the stay-put IEP, were not to be included in that amount. *Id.* at 455–57. Doe cannot now bypass that determination by seeking reimbursement from funds set aside for prospective relief, and any further requests for such relief would be equally frivolous.

Accordingly, Doe's argument for reimbursement of tuition and uncovered expenses fails.[16]

Similarly, the district court did not abuse its discretion in determining that the compensatory award should not include John's high school tuition. The compensatory award is meant to cover "analogous educational services" to those provided in the stay-put IEP. *Id.* at 457. While we did not explicitly define "analogous educational services" in *Doe I*, we explained that the stay-put provision was meant to guarantee the same general educational program. *Id.* at 457 & n.17 (citing *T.M.*, 752 F.3d at 171). This is because the IDEA's stay-put provision "guarantees only the same general level and type of services that the disabled child was receiving." *T.M.*, 752 F.3d at 171. Here, "analogous" services do not extend to tuition, as that was not a "type" of service John received from the

---

[16] While Doe is correct that a stay-put violation can result in an award regardless of the merits of an accompanying FAPE claim, in *Doe I* we determined that, because of the stay-put IEP, the Board was not required to pay for uncovered services, and thus, Doe was not entitled to reimbursement for those services. *Doe I*, 790 F.3d at 456–57. Moreover, as discussed above, Doe did not seek tuition on her stay-put claim.

Board in the 2008–2009 IEP. *See Doe I*, 790 F.3d at 446. That Doe did not seek tuition as part of her stay-put claim supports this determination.[17]

Doe offers no compelling reason to revisit these issues. Doe argues that reimbursing her for tuition and uncovered services would be more equitable than the compensatory education award. But the purpose of the stay-put provision is to maintain the status quo. *See Mackey ex rel. Thomas M. v. Bd. of Educ. for Arlington Cent. Sch. Dist.*, 386 F.3d 158, 163 (2d Cir. 2004); *see also Zvi D. v. Ambach*, 694 F.2d 904, 906 (2d Cir. 1982) ("Under the [stay-put provision of the] statute, the inquiry focuses on identifying 'the then current educational placement,' and, further, *on who should pay for it*." (emphasis added)). The IDEA does not require school districts to provide "every special service necessary to maximize each handicapped child's potential." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 199 (1982). Here, the relevant IEP only provided for certain hours of related services. *See Doe I*, 790 F.3d at 446. To make up for the Board's

---

[17] Because we find that Doe is not entitled to reimbursement for tuition during the pendency of proceedings, we need not address her claim that tuition reimbursement should not be subtracted from the total value of the compensatory award. *See* Appellant Suppl. Br. at 26–27.

violation, compensatory education was awarded, which included expenditures for "analogous services" based on John's evolving needs.[18]

Doe also claims that the delays caused by our dismissal of *Doe II* warrants reconsideration of the reimbursement issue with respect to extended school year services, assistive technology, and other "uncovered" services. The order that Doe appealed in *Doe II* was not "a final, appealable order." *Doe II*, 747 F. App'x at 31. Whatever time that was lost here was because Doe chose to appeal an order that was clearly not appealable. Thus, we had no jurisdiction to address the merits at that time. *See* 28 U.S.C. § 1291. Further, regardless of any delay caused by Doe's premature appeal, the Board was not obligated to reimburse Doe for services she

---

[18] We emphasize that while Doe may believe that her responsibility for Solomon Schechter tuition was originally contemplated as a temporary, or trial, arrangement, it ultimately became the plan provided for in the parties' last agreed-upon IEP. Accordingly, when Doe filed her administrative due process complaint, that arrangement became the status quo and defined the Board's responsibility during the pendency of the proceedings that followed. That these proceedings have continued for years does not alter the requirements under the IDEA's stay-put provision. We understand that where there is protracted litigation, it may be challenging to craft an appropriate prospective award due to the student's evolving needs—especially where, as here, the stay-put IEP is over a decade old. This is why the compensatory award may cover "analogous educational services" to those provided in the stay-put IEP.

34

chose to provide John beyond those outlined in the stay-put IEP. *See Rowley*, 458 U.S. at 199.[19]

Next, notwithstanding our determination in *Doe I* that 20 U.S.C. § 1415 "is clear that the Board's obligation to provide stay-put services was not triggered until [Doe's] administrative complaint was filed," *Doe I*, 790 F.3d at 456, Doe again argues that her stay-put rights were triggered when parties reach an impasse. According to Doe, *Doe I* held her to a "more stringent statutory interpretation than the one in effect" at the time when the parties reached an impasse. *Doe II*, 2d Cir. 17-2564, doc. 50, (Appellant Br.) at 47. Not true. In *Doe I*, we noted that the decision relied on by the district court and Doe was nonprecedential and distinguishable. *Doe I*, 790 F.3d at 455–56 (distinguishing *A.S. ex rel. P.B.S. v. Bd. of Educ. for Town of W. Hartford*, 47 F. App'x 615, 616 n.2 (2d Cir. 2002) (summary order)). Further, the plain language of the stay-put provision, as well as its implementing regulation, supported our decision. *See Doe I*, 790 F.3d at 454–55

---

[19] Doe would have had earlier access to compensatory education funds **had she not moved for a stay of the prospective compensatory award**. Among other things, the compensatory award allows Doe to obtain reimbursement for assistive technology. *See Doe ex rel. Doe*, 262 F. Supp. 3d at 36–37.

(citing 20 U.S.C. § 1415(i), (j); 34 C.F.R. § 300.518).  Doe's attempt to revive this argument is barred by the law of the case doctrine.  *See Holder*, 564 F.3d at 99.[20]

Accordingly, for the reasons stated above, Doe's challenges to various aspects of *Doe I* are barred by the law of the case doctrine and the district court did not abuse its discretion in denying Doe reimbursement for tuition and uncovered expenses.

## IV.    Other Issues

### A. Doe's Request for Reimbursement for Physical Therapy

After the 2017 Bench Trial on compensatory education, the district court denied Doe reimbursement for physical therapy during the 2013–2014 school year because it found that expense was covered by Doe's medical insurance.  Doe moved for reconsideration by offering evidence that she paid for the therapy.  The district court did not abuse its discretion by denying reimbursement.  *See Kellogg v. Strack*, 269 F.3d 100, 104 (2d Cir. 2001) (per curiam) (reviewing denial of reconsideration for abuse of discretion).  Doe does not refute the district court's

---

[20] Doe also asks us to determine, once again, whether Solomon Schechter was an appropriate placement.  Like many of Doe's points in this appeal this is ground previously covered.  *Doe I*, 790 F.3d at 452.  Doe offers no cogent and compelling reason to reconsider the issue here.

finding that her evidence—receipts from the hospital where John received physical therapy—were available during the original trial.

### B. Doe's Request for Reimbursement for Her Expert Witness

Doe argues that the Board should have paid for her expert witness, Dr. Robert Kemper. Fees for non-attorney experts, such as Dr. Kemper, are not recoverable under the IDEA. *See Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 297–98 (2006). Doe argues that the Board is obligated to pay for an independent education evaluation and that Dr. Kemper testified at the Board's request. But Doe did not ask for reimbursement of Dr. Kemper's fees for testifying in the district court. Therefore, we will not consider whether the Board should reimburse her for the evaluation or for his testimony. *See Virgilio*, 407 F.3d at 116.

### C. Doe's Request for Litigation Costs and Attorneys' Fees

Finally, Doe argues that she should be reimbursed for litigation costs while she appeared *pro se* and for attorneys' fees for attorneys she retained earlier in the case. But the district court did not issue a final order as to Doe's request for attorneys' fees until March 17, 2020. *See* Dist. Ct. doc. 301. Accordingly, Doe did

not, as a formal legal matter, appeal from this ruling and we decline to consider the issue here.[21]

## CONCLUSION

We have considered all of Doe's remaining arguments and find them to be without merit. For the foregoing reasons, the judgment of the district court is **VACATED** and **REMANDED** in part with regard to (1) the power of the escrow agent to unilaterally decide whether John still requires certain educational services, and (2) the requirement that Doe pay for half the maintenance fee on the escrow account. It is **AFFIRMED** in all other aspects.

---

[21] Doe also argues that Judge Jacobs should recuse himself from deciding this appeal because, according to Doe, he is biased in favor of the Board because he sat on the *Doe I* appeal. As an initial matter, we denied Doe's motion for Judge Jacobs's recusal in 2d Cir. 17-2564, which was premised on similar reasons. *See* 2d Cir. 17-2564, docs. 110 (Mot.), 116 (Order). We also denied Doe's motion for Judge Jacobs's recusal in this appeal. *See* 2d Cir. 19-354, docs. 40 (Mot.), 46 (Order). Further, prior adverse rulings are not evidence of bias. *See Liteky v. United States*, 510 U.S. 540, 555 (1994) ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion."). Thus, Doe's argument for Judge Jacobs's recusal is without merit.