22-2962-cv
*Neske v. NYC Dep't of Educ.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 26th day of December, two thousand twenty-three.

Present:
> DENNIS JACOBS,
> ROBERT D. SACK,
> WILLIAM J. NARDINI,
> *Circuit Judges.*

---

DOROTHY NESKE, Individually and as Parent and Natural Guardian of A.N., CHRISTOPHER NESKE, Individually and as Parent and Natural Guardian of A.N.,

> *Plaintiffs-Appellants*,

v.                                                                22-2962-cv

NEW YORK CITY DEPARTMENT OF EDUCATION, CHANCELLOR OF DOE MEISHA PORTER,

> *Defendants-Appellees*.

---

| | |
|---|---|
| For Plaintiffs-Appellants: | RORY J. BELLANTONI (Ashleigh C. Rousseau, *on the brief*), Brain Injury Rights Group, New York, NY |
| For Defendants-Appellees: | REBECCA L. VISGAITIS (Richard Dearing, Claude S. Platton, *on the brief*), *of Counsel*, for Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, New York, NY |

Appeal from a judgment of the United States District Court for the Southern District of New York (Valerie E. Caproni, *District Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiffs-Appellants Dorothy and Christopher Neske (the "Neskes") are the parents of A.N., a young student with learning disabilities due to a traumatic brain injury. The Neskes appeal from a judgment of the United States District Court for the Southern District of New York (Valerie E. Caproni, *District Judge*), entered on August 12, 2022, denying reimbursement of educational and transportation costs incurred on behalf of A.N. during the 2018-2019 school year. Pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, children with disabilities are entitled to a free and appropriate public education ("FAPE"), including special services provided at public expense at a suitable school, in accordance with each student's Individualized Education Program ("IEP"). Parents dissatisfied with the recommended IEP may unilaterally enroll their child in a private school and, at their own risk, seek retroactive tuition reimbursement. The Neskes sought public funding for A.N.'s tuition at the International Institute for the Brain ("iBrain"), a private school, for the 2018-2019 school year. A.N. was previously enrolled at iHope, a different private school serving children with traumatic brain injuries. The Neskes unilaterally decided to transfer A.N. to iBrain because they disagreed with the New York Department of Education's ("DOE") recommended IEP for A.N.'s 2018-2019 school year, which proposed placing A.N. in a public school. The Neskes requested reimbursement from the DOE for A.N.'s tuition at iBrain and filed a due process complaint, which triggered a two-tiered administrative process. In the administrative proceedings, both the

2

Impartial Hearing Officer ("IHO") and State Review Officer ("SRO") found that A.N. was denied a FAPE for the 2018-2019 school year and that A.N.'s placement at iBrain was an appropriate placement, but that equitable considerations did not support the Neskes' claim for reimbursement of tuition. The district court agreed and held that equitable considerations did not support reimbursement because of the Neskes' overall conduct during the process of developing A.N.'s IEP for the 2018-2019 school year. The Neskes now appeal that decision. We assume the parties' familiarity with the case.

When determining whether parents are entitled to tuition reimbursement under the IDEA, the Supreme Court has applied what has become known as the *Burlington/Carter* test. *See Florence Cnty. Sch. Dist. Four v. Carter By & Through Carter*, 510 U.S. 7, 12–13 (1993); *Sch. Comm. of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 370 (1985). Under that test, courts must determine "(1) whether the school district's proposed plan will provide the child with a [FAPE]; (2) whether the parents' private placement is appropriate to the child's needs; and (3) a consideration of the equities." *C.F. ex rel. R.F. v. N.Y. City Dep't of Educ.*, 746 F.3d 68, 76 (2d Cir. 2014).[1] The DOE conceded (a) that they did not propose a plan that would have provided A.N. with a FAPE in 2018-2019; and (b) that iBrain was an appropriate placement. Therefore, we consider only whether the district court properly determined that the equities warrant denying the Neskes' request for reimbursement. We review such a denial of equitable relief for abuse of discretion. *Doe v. E. Lyme Bd. of Educ.*, 962 F.3d 649, 659 (2d Cir. 2020). "A district court abuses its discretion when its decision (1) rests on an error of law or a clearly

---

[1] Unless otherwise indicated, case quotations omit all internal quotation marks, alteration marks, footnotes, and citations.

erroneous factual finding, or (2) cannot be found within the range of permissible decisions." *T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist.*, 752 F.3d 145, 170 (2d Cir. 2014).

Additionally, we must give due weight to the administrative findings because federal courts generally "lack the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 208 (1982). Consequently, district courts give "deference to state administrative agencies when reviewing their IDEA decisions," *C.L. v. Scarsdale Union Free Sch. Dist.*, 744 F.3d 826, 838 (2d Cir. 2014), and this "deference is particularly appropriate when the state officer's review has been thorough and careful." *M.O. v. New York City Dep't of Educ.*, 793 F.3d 236, 243 (2d Cir. 2015).

We conclude that the district court did not abuse its discretion in denying the Neskes' request for tuition reimbursement. "IDEA provides district courts with broad discretion to grant such relief as the court determines is appropriate in order to carry out its statutory mandate." *T.M.*, 752 F.3d at 170. Here, the district court agreed with the IHO's and SRO's conclusion that the Neskes had been uncooperative in the process of coordinating A.N.'s placement. The record provides sufficient support for the district court's determination, based on the agency's findings, that the Neskes not only did not cooperate with the DOE but also were likely part of a broader campaign to disrupt the IEP creation process to support the migration of students from iHope to iBrain, which was orchestrated by the founder of iBrain and his related law firm. Specifically, the district court highlighted that the record showed that dozens of iHope parents, including the Neskes, insisted on requesting that a physician be present at the in-person IEP meetings but then failed to attend themselves. The IHO and SRO found that DOE physicians could not physically

attend all IEP meetings because they received such a large volume of requests from parents. However, when the physicians did attend the in-person IEP meetings at the parents' behest, the parents were often absent, or the meetings were cancelled on short notice. The district court determined that these group cancellations were evidently a delaying tactic "designed to stymie the DOE's effort to create IEPs for the students." J.A. 134 (internal quotation marks omitted). The Neskes' conduct tracked that obstructive pattern, strongly suggesting that their requests were guided to a relevant degree by the founder of iBrain as part of the campaign to shift students from iHope to iBrain and force the DOE to reimburse tuition costs at the new school without having to go through the normal collaborative process.

Further, the IHO and SRO determined that the Neskes were uncooperative, in part, because they found Dorothy Neske's testimony to lack credibility. The district court agreed and noted that her testimony contained a number of contradictions. For example, Dorothy Neske initially testified that she had not conferred with a lawyer and had not discussed her ability to pay tuition with the iBrain administration; then she testified, however, that she had indeed discussed the contract with the law firm that provided it to her. But when asked to identify that law firm, she backtracked, in what could fairly be read as an effort to conceal the role played by the iBrain-related law firm in slowing down the IEP process: "I'm not referring to any law firm." J.A. 133. The district court properly relied on the IHO and SRO's factual findings regarding the credibility and, ultimately, cooperativeness of the parents.

The IEP creation process is meant to be collaborative, but the record demonstrates that the Neskes were not present for the final IEP team meeting, even though they were afforded the opportunity to participate, and, at the parents' request, the DOE attempted to arrange a mutually

5

convenient time and place for the meeting to further accommodate the Neskes' schedule. When conducting an analysis of the equities, the district court properly weighed the Neskes' absence from the IEP meeting, likely involvement in the organized campaign to move students from iHope to iBrain, and the concomitant inference that their absence and attempts to delay the creation of A.N.'s IEP were taken in bad faith. Given these considerations, we cannot say that the district court exceeded its broad discretion when it determined that the Neskes were not entitled to tuition reimbursement. We have considered the remainder of the Neskes' arguments and find them to be unpersuasive.

<p style="text-align:center">*       *       *</p>

Accordingly, we **AFFIRM** the judgment of the district court.

<div style="margin-left:40%">
FOR THE COURT:<br>
Catherine O'Hagan Wolfe, Clerk of Court
</div>